**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1076-16T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

EUGENE C. TAYLOR,

    Defendant-Appellant.

_____

Argued May 17, 2017 — Decided July 24, 2017

Before Judges Alvarez, Accurso, and Lisa.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 15-10-1164.

Daniella Gordon argued the cause for appellant (The Gordon Law Firm, and Barry J. Pollack (Miller & Chevalier, Chartered) of the District of Columbia bar, admitted pro hac vice, attorneys; Ms. Gordon and Mr. Pollack, on the briefs).

Alexis R. Agre, Assistant Prosecutor, argued the cause for respondent (Scott A. Coffina, Burlington County Prosecutor, attorney; Ms. Agre, of counsel and on the brief).

PER CURIAM

On leave granted, defendant Eugene Taylor appeals from the March 7, 2016 denial of his motion to dismiss a superseding indictment charging him with first-degree attempted murder, N.J.S.A. 2C:11-3(a)(1); first-degree disarming a law enforcement officer, N.J.S.A. 2C:12-11(a); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); third-degree terroristic threats, N.J.S.A. 2C:12-3(b); third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(3)(a); third-degree aggravated assault on a law enforcement officer, N.J.S.A. 2C:12-1(b)(5)(a); and fourth-degree obstructing the administration of law, N.J.S.A. 2C:29-1(a). Defendant's subsequent motion for reconsideration was also denied. Defendant had argued in support of his applications that evidence of his psychiatric state at the time of the incident in question was clearly exculpatory and thus the State should have presented it to the grand jury. For the reasons stated in Judge Delehey's written opinion of March 7, 2016, we affirm both orders. We add some brief comments.

The charges arose when during the early morning hours of May 14, 2013, police were called about a man out in the street who was yelling about Jesus. Delanco Township Police Department Officer Frank Ambrifi responded. When he arrived, defendant jumped in

front of the police car, and the officer nearly struck him. Defendant appeared angry, and even at gunpoint he refused to get down on the ground. When Ambrifi got out of his vehicle, defendant ran towards him. Ambrifi sprayed defendant with mace twice without success, and began to strike defendant with a flashlight to try to subdue him. Defendant head-butted the officer. The two men struggled to the ground, and Ambrifi shot defendant four times. Defendant continued to attack the officer, who also shot himself in the leg as the men wrestled for control of Ambrifi's gun. When backup arrived, defendant was taken to a hospital, and later to the Ann Klein Forensic Center where he was diagnosed as schizophrenic.

During the grand jury presentation, the officer who testified regarding his interviews about the event also testified about his interviews with defendant's friends and family. Defendant's acquaintances said that in the days leading up to the incident, defendant became obsessed with religion and death.

Prior to the grand jury presentation, defendant was examined by a forensic psychologist, who opined that defendant had been suffering from paranoid schizophrenia at the time of the incident, and was unable to understand the nature of his conduct, or distinguish right from wrong. That report, as well as the records

from defendant's hospitalization at Ann Klein, were available when the case was presented to the grand jury.

In his written decision, Judge Delehey first distinguishes the insanity defense from a mental disease or defect that results in diminished capacity. As he put it, the insanity defense "does not exculpate, but rather excuses a person's conduct. Diminished capacity, however, negates a finding of purposeful or knowing conduct." The judge agreed with the well-established proposition that pursuant to State v. Hogan, 144 N.J. 216 (1996), the State had to present clearly exculpatory evidence. He did not agree, however, that a defendant's mental state constituted such evidence.

Judge Delehey reasoned that a grand jury may either indict or hand down a no bill, while a petit jury can find a defendant guilty, acquit, or find a defendant not guilty by reason of insanity. When diminished capacity is raised as a defense, a jury has the options of finding a defendant either guilty or not guilty if he or she lacked the requisite mental state. The grand jury process is nothing more than a prosecutor obtaining "the permission of the grand jury to put the matter before a petit jury for its determination . . . ." The affirmative defense of insanity requires a petit jury's resolution after both sides have the opportunity to retain experts, marshal the evidence, and cross-

4

examine the experts on these issues. The defense of diminished capacity also requires a trial, with similar opportunities to develop the defense. Both are affirmative defenses pled after indictment, therefore the prosecutor had no obligation to present any evidence of defendant's mental condition. This evidence was not clearly exculpatory, but rather pertained only to affirmative defenses, which "can be pled only after indictment. Insanity and diminished capacity are affirmative defenses . . . . Resolution of affirmative defenses before the grand jury would convert it to an adjudicating body rather than an accusatory one."

The judge also denied the motion for reconsideration, on the same basis. On appeal, defendant raises the following points:

> I. The Lower Court Erred by Not Dismissing the Superseding Indictment Based on the State's Failure to Disclose to the Grand Jury Exculpatory Evidence and to Provide Appropriate Legal Instructions []
>
> A. The State Violated Its Duty to Disclose Clearly Exculpatory Evidence to the Grand Jury []
>
> B. The State Violated Its Duty to Provide the Grand Jury Relevant Legal Instructions []
>
> C. The Trial Court's Rationales for Not Dismissing the Superseding Indictment Are Inconsistent with Binding Appellate Precedent []
>
> > 1. The trial court was wrong to conclude the State had no duty to

present evidence of, or legal instructions pertaining to, diminished capacity and insanity merely because those defenses must be pled after indictment [ ]

    a. The prosecutorial duty imposed by <u>Benny Hogan</u> applies to evidence supporting a diminished capacity defense [ ]

    b. The prosecutorial duty imposed by <u>John Hogan</u> applies to evidence supporting diminished capacity and insanity defenses [ ]

2. Allowing the grand jury to consider evidence of diminished capacity and insanity would not have improperly transformed it into an adjudicating body [ ]

3. The trial court erred in concluding that inviting the grand jury to consider the issue of insanity would run afoul of the State's involuntary commitment laws [ ]

4. The court wrongly concluded that the State had no duty to disclose Dr. Hugonnet's findings to the grand jury [ ]

D. The State's arguments in support of the trial court's ruling are unavailing [ ]

1. The State wrongly asserts it had no duty to disclose Dr. Hugonnet's report [ ]

2. The State's concerns regarding the admissibility of diminished

> capacity evidence and the
> defendant's burden of proving
> insanity at trial are misplaced []

> II. The Superseding Indictment Should Be
> Dismissed with Prejudice []

These arguments repeat those made to Judge Delehey, and are equally unavailing.

A trial court's decision denying a motion to dismiss an indictment is reviewed for abuse of discretion. State v. Saavedra, 222 N.J. 39, 55 (2015). Viewing the evidence and the rational inferences therefrom in a light most favorable to the State, we determine "whether the trial court abused its discretion when it found that the State presented evidence sufficient to establish a prima facie case on the elements of the relevant offenses," and when it found the State "did not withhold exculpatory evidence from the grand jury or fail to present to the grand jury a defense . . . that should have been presented." Id. at 57. However, "[i]t is not the role of the reviewing court to question the strength of the case, its possible deterrent value, or the government's enforcement priorities." State v. L.D., 444 N.J. Super. 45, 54 (App. Div. 2016)(citing State v. Perry, 124 N.J. 128, 168 (1991)).

We see no abuse of discretion in Judge Delehey's opinion, which is grounded in the clear distinction between the grand jury

process and the petit jury system. The State is required to present exculpatory evidence to a grand jury only "in the rare case in which . . . evidence . . . both directly negates the guilt of the accused <u>and</u> is clearly exculpatory." <u>Saavedra</u>, <u>supra</u>, 222 <u>N.J.</u> at 63 (emphasis in original) (quoting <u>Hogan</u>, <u>supra</u>, 144 <u>N.J.</u> at 237). Evidence "directly negates" a defendant's guilt where it "squarely refute[s] an element of the crime." <u>Ibid.</u> Determining whether evidence is "clearly exculpatory" requires it "to be analyzed 'in the context of the nature and source of the evidence, and the strength of the State's case.'" <u>State v. Scherzer</u>, 301 <u>N.J. Super.</u> 363, 427 (App. Div. 1997) (quoting <u>Hogan</u>, <u>supra</u>, 144 <u>N.J.</u> at 237). Furthermore, this disclosure requirement does not apply unless the prosecutor has "actual knowledge" of the exculpatory evidence. <u>Saavedra</u>, <u>supra</u>, 222 <u>N.J.</u> at 63.

In <u>Scherzer</u>, the defendants argued the State failed to present "clearly exculpatory evidence" to the jury, specifically, testimony from two of defendants' experts. <u>Scherzer</u>, <u>supra</u>, 301 <u>N.J. Super.</u> at 427. The experts would have refuted the mental state of the victim as portrayed by the State. <u>Ibid.</u> If taken as true, the testimony would have "directly negated an element of the crime defendants were accused of." <u>Ibid.</u> However, because presenting such testimony would have required the grand jury to

make a "credibility judgment," we held it was not "clearly exculpatory" and the State was not obligated to present it. Ibid.

The parallel between the scenario in Scherzer and the one in this case is quite clear. In order to reach a decision, the grand jury would have had to weigh the expert's credibility, thus resulting in testimony that, if the jury had concluded it was not credible, would not have been "clearly exculpatory." See Scherzer, supra, 301 N.J. Super. at 427. Thus the State had no obligation to present the opinion evidence.

Furthermore, there was no obligation for the jury to be instructed regarding possible defenses. The State has a responsibility to instruct the jury on relevant defenses as a "corollary to [the] responsibility to present exculpatory evidence." State v. Hogan, (John Hogan), 336 N.J. Super. 319, 341 (2001). However, it is not the State's obligation to sift through the record to make the determination as to when those instructions are appropriate. Id. at 343. It is only when there are facts that clearly establish the appropriateness of such an instruction, not expert opinion, that an instruction has to be given. See id. at 343-44.

It is black letter law that the diminished capacity defense is one considered a "failure of proof defense." State v. Nataluk, 316 N.J. Super. 336, 343 (App. Div. 1998). Evidence of defendant's

mental health illness or mental defect negates the mens rea element of the crime. Ibid. It must be established by a preponderance of the evidence. State v. Zola, 112 N.J. 384, 442-43 (1988).

Clearly, the crimes with which defendant was charged required a purposeful or knowing state of mind. Evidence of mental illness or defects can in some instances, obviously, negate the mens rea necessary for the crime. But, for example, a condition which results in uncontrollable rage or lack of control would not, by itself, negate a requisite mental condition such as knowledge or purpose." Nataluk, supra, 316 N.J. Super. at 344.

Indeed, the New Jersey Supreme Court has stated that if a mental condition "resulting in a rage and loss of control does not affect cognitive capacity sufficient to preclude the necessary mental state, it will not constitute diminished capacity." State v. Galloway, 133 N.J. 631, 646-47 (1993)(emphasis in original). The process by which a petit jury considers diminished capacity, requires a trial, direct and cross-examination as well as expert testimony at times. A grand jury only determines whether a crime has been committed and if a defendant probably committed it; it is an accusatory not adjudicatory body. Sherzer, supra, 301 N.J. Super. at 427. If defendant's argument is accepted, the function of the grand jury would be completely distorted. A grand jury's only role is to decide whether a criminal proceeding should be

commenced. Ibid. Therefore, no instruction was necessary, nor should proof have been presented, regarding diminished capacity. It would have distorted the jury's functioning, and would not have clearly negated guilt. See John Hogan, supra, 336 N.J. Super. at 343-44.

The "insanity" defense is codified in N.J.S.A. 2C:4-1, which provides that "[a] person is not criminally responsible for conduct if at the time of such conduct he was laboring under such a defect of reason, from disease of the mind as not to know the nature and quality of the act he was doing, or if he did know it, that he did not know what he was doing was wrong." It is an "affirmative defense which must be proved by a preponderance of the evidence." Ibid.

Unlike diminished capacity, the insanity defense does not negate the mental elements of a crime, it affords a petit jury the ability to return a verdict of "not guilty by reason of insanity," rather than "guilty" or "not guilty." State v. Breakiron, 108 N.J. 591, 600 (1987). A defendant who is found not guilty by reason of insanity must be evaluated by the court in accordance with N.J.S.A. 2C:4-8. After the examination, if the court finds that the "defendant cannot be released without supervision or conditions without posing a danger to the community or to himself, it shall commit the defendant to a mental health facility . . .

." N.J.S.A. 2C:4-8(b). Otherwise defendant is to be released. Ibid.

The legislative history of the insanity defense runs counter to defendant's position. The predecessor to N.J.S.A. 2C:4-8 was N.J.S.A. 2A:163-3 (repealed 1979), which provided that "[i]f, upon the trial of any indictment, the defense of insanity is pleaded . . . the jury shall be required to find specially by their verdict whether or not such person was insane at the time of the commission of such offense . . . and . . . whether or not such insanity continues . . . ." (Emphasis added). If the jury found the defendant was and continued to be insane, the court was required to order his commitment. Ibid. This statute was repealed after the Court in State v. Krol, 68 N.J. 236, 255 (1975) held it unconstitutional because it authorized "involuntary commitment without proof of dangerousness." However, the Court left the preamble to the statute intact, which states that the insanity defense is to be pleaded "upon the trial of any indictment," not before the indictment. Ibid.

The Court in Krol detailed the procedure for temporary commitment and evaluation of a defendant acquitted for insanity that would later be codified in N.J.S.A. 2C:4-8. Id. at 255-265. While N.J.S.A. 2C:4-8 begins "[a]fter acquittal by reason of insanity" rather than "upon the trial of any indictment," the

12

legislature was likely mirroring the language in Krol, which begins describing the commitment process with "[f]ollowing acquittal by reason of insanity . . . ." Id. at 255. The Court noted that "courts in determining [an insane defendant's] dangerousness should take full advantage of expert testimony presented by the State and by defendant." Id. at 261. Since, as discussed above, the State need not present defendant's or its own expert testimony on insanity to a grand jury, the Court was obviously still only contemplating the assertion of an insanity defense at trial after indictment. There is therefore no reason to believe that the legislature meant for N.J.S.A. 2C:4-8 to broaden the defense so it could be presented to a grand jury.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1076-16T2